STONE, Appellant,

v.

**GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY, Appellee.**

[Cite as *Stone v. Greater Cleveland Regional Transit Auth.* (1993), 92 Ohio App.3d 373.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63556.

Decided Oct. 12, 1993.

*Leonard F. Lybarger,* for appellant.

*Russell T. Adrine, Douglas A. Gonda* and *Dan T. Pribich,* for appellee.

JAMES D. SWEENEY, Judge.

Plaintiff-appellant N. Bert Stone ("Stone") appeals from: (1) the granting of a directed verdict in favor of the defendant-appellee Greater Cleveland Regional Transit Authority ("GCRTA") at the close of plaintiff's case following one week of jury trial; (2) the granting of GCRTA's motion for summary judgment on Stone's claim of age discrimination; and (3) the granting of summary judgment in favor of GCRTA on Stone's equal pay claim. For the reasons adduced below, we affirm.

A review of the partial record submitted to this court reveals that Stone had been employed by GCRTA in the non-union salaried position of Supervisor of Engineering prior to his accepting a voluntary early retirement buy-out package on February 1, 1988.

Stone's re-filed complaint alleged five claims for relief.[1]

The first claim was for breach of contract. In this first claim, Stone alleged that GCRTA failed to abide by the requirements of its salary and performance

---

1. The original five-count complaint was filed on November 14, 1988, in Cuyahoga Common Pleas Court case No. 159851. Summary judgment was granted in favor of GCRTA on July 2, 1990, as to the claims based upon age discrimination and equal pay act only. The original trial date was scheduled for November 26, 1990. On November 21, 1990, Stone filed a notice of voluntary dismissal, without prejudice, pursuant to Civ.R. 41(A)(1). Stone re-filed the action on February 21, 1991. See Cuyahoga Common Pleas Court case No. 206091.

review plan in depriving Stone of a number of annual periodic performance reviews. This substantial lack of individualized performance review allegedly caused Stone not to receive increased salary adjustments, resulting in a loss of earnings from February 1, 1978 through February 22, 1986, and a proportionate loss of pension income during his retirement.

The second claim was also breach of contract. In this second claim, Stone alleged that in 1986, GCRTA created the position of Engineering Project Manager to oversee the defendant's involvement at the renovation of Tower City. This new position was filled by Richard Butch, who was hired from outside GCRTA's existing employee base without benefit of prior public notice of the position. It is alleged by Stone that this lack of public notice prior to filling the position was contrary to Rule 5 of GCRTA's Merit System, causing Stone to incur a loss of salary from February 23, 1986 (the effective date of Butch's hiring) to the date of Stone's retirement on February 1, 1988, with a proportionate loss of pension income during his retirement.

The third claim was for alleged age discrimination pursuant to R.C. 4101.17, 4112.02(A), (N) and 4112.99, in Stone's being denied, by reason of his age, the opportunity to become an applicant for the position ultimately filled by Butch.[2] Again, this allegedly caused him to lose salary income and retirement pension income.

The fourth claim was for the alleged violation of Ohio's Equal Pay Act pursuant to R.C. 4117.01. It is alleged that Stone was paid at a rate less than Butch for work that was substantially equal to Butch's position, causing Stone to suffer reduced salary income from November 14, 1987 to retirement, and a proportionate loss of pension income.

The fifth claim was that the above-mentioned claims constituted a violation of Ohio's fair employment practice law pursuant to R.C. 4112.99, which became effective on September 28, 1987.

On July 24, 1991, the parties stipulated that all pretrial motions, briefs and orders pertaining to the original case filing shall be deemed to have been filed and entered in the re-filed action. This would include the granting of summary judgment in favor of GCRTA on the claims of age discrimination and equal pay.

The jury trial began on March 5, 1992, and ended on March 13, 1992, when the trial court granted GCRTA's motion for directed verdict at the close of plaintiff's case as to the breach of contract claims on the grounds that Stone failed to timely pursue his administrative appeal remedy within the GCRTA, with regard to the

---

2. Stone was fifty-nine years old at the time of the alleged age discrimination. Butch was forty-five years old at that time. This same matter of age discrimination was the subject of an EEOC complaint filed by Stone on January 19, 1988.

lack of performance evaluations and salary inequities, and to the common pleas court pursuant to R.C. Chapter 2505, with regard to the hiring of Butch.[3] The ruling on the motion to dismiss, the trial exhibits, and the court files constitute the record on appeal.

This appeal, raising three assignments of error, followed.

## I

"The trial court erred in granting the defendant a directed verdict at the close of plaintiff's case in chief."

Ohio Civ.R. 50(A)(4) provides:

"(4) When Granted on the Evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The court in *Bentley v. Stewart* (1992), 71 Ohio App.3d 510, 512, 594 N.E.2d 1061, 1062, stated the following with respect to reviewing a directed verdict:

"When ruling on a motion for a directed verdict, the trial court's function in a jury trial is not to weigh the evidence but to 'determine whether there is any evidence of substantial probative value in support of the non-moving party's claim.' *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 166, 493 N.E.2d 293, 295. The Civ.R. 50(A) test looks to the sufficiency of the evidence on each element of a claim to take the case to the jury. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. The general rule is that a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. Therefore, a motion for a directed verdict presents a question of law as opposed to a question of fact. *Id.* Arguments which look to the weight of the evidence are inappropriate for purposes of ruling on such a motion. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467."

■ It is not contested by the parties that GCRTA is a political subdivision of the state, having been created by R.C. Chapter 306. Appeals from final orders from a political subdivision must be perfected to, in this case, the common pleas

---

**3.** In its order, the court included the certification of no just reason for delay pursuant to Civ.R. 54(B).

court within thirty days from the entry of that final order. See R.C. 2505.03 and 2506.01. GCRTA's Merit System Rules, at Rule 15, provide for an internal appeal process, culminating in an appeal to the Merit System Appeals Board within ten days of the date of the decision complained of issued by the appointing authority.[4] This internal appeal process, at every step of the process except the final step to the Merit System Appeals Board, requires that notice and a hearing be afforded the complaining party. See GCRTA Conditions of Employment, Section 7, Article 1. A review of the record of the grievance process leading up to the final order of April 28, 1988 of the GCRTA Acting General Manager, an appointing authority, which order denied Stone's salary and promotion grievances, indicates that Stone was provided with notice, a hearing, and he presented evidence in support of his grievances. Having been provided notice, a hearing, and the opportunity to offer evidence in support of his grievances, we conclude that the administrative proceeding was "quasi-judicial" in nature. See *In re Appeal of Howard* (1991), 73 Ohio App.3d 717, 719–720, 598 N.E.2d 165, 166–167; *Talbut v. Perrysburg* (1991), 72 Ohio App.3d 475, 478, 594 N.E.2d 1046, 1048; *Gunn v. Euclid Teachers Assn.* (1989), 65 Ohio App.3d 312, 315, 583 N.E.2d 1324, 1326. Being "quasi-judicial" in nature, the order from that proceeding was subject to appeal pursuant to R.C. 2506.01.

The record is equally clear that Stone did not exhaust his administrative remedy by appealing the decision of the Acting General Manager to the Merit System Appeals Board and then compounded that error by not appealing the GCRTA order of April 28, 1988, until November 14, 1988, a date well beyond the date for perfecting an appeal to common pleas court pursuant to R.C. Chapters 2505 and 2506.

We conclude that the trial court did not abuse its discretion in granting the motion for directed verdict.

The first assignment of error is without merit.

## II

"The trial court erred in granting defendant summary judgment on plaintiff's age discrimination claims."

The following was stated in *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 666, 591 N.E.2d 752, 754, relative to the review of a motion for summary judgment:

---

4. The appointing authority consists of either the GCRTA's General Manager, Comptroller or General Counsel. Merit System Rule 1.4.

"The standard of review in this appeal is well established. Pursuant to Civ.R. 56(C), summary judgment is proper if the trial court determines that:

" '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

"Once summary proceedings have been properly initiated, the responding party must set forth specific facts demonstrating triable issues on all essential matters for which he bears the initial burden of proof. Mere reliance upon the pleadings is insufficient. Civ.R. 56(E); see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274. The dispute must be 'material' in that the facts involved have the potential to affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211. The issue to be tried must also be 'genuine,' allowing reasonable minds to return a verdict for the nonmoving party. *Id.,* 477 U.S. at 248–252, 106 S.Ct. at 2510–2512, 91 L.Ed.2d at 211–214."

Appellant relies upon R.C. 4101.17 as the basis for his charge of age discrimination in being denied the opportunity, as a result of his age (fifty-nine), to apply for the position filled by Butch. His opportunity was denied through the alleged failure of GCRTA to provide notice of the position prior to selecting the winning applicant. The version of R.C. 4101.17, in effect at the time of filing suit, provided:

"(A) *No employer shall discriminate in any job opening against any applicant* or discharge without just cause any employee *between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.*

"(B) Any person between the ages of forty and seventy discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to him for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse him for the costs, including reasonable attorney fees, of the

action. The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code.

"(C) The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to him the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause." (Emphasis added.)

The Supreme Court stated:

"*Absent direct evidence of age discrimination,* in order to establish a prima facie case of a violation of R.C. 4101.17 in an employment discharge action, a plaintiff-employee *must demonstrate* (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. (*Barker v. Scovill, Inc.* [1983], 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, paragraph one of the syllabus, modified and explained.)" (Emphasis added.) *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus. See, also, Section 206, Title 29, U.S.Code, Fair Labor Standards Act; Sections 621 and 623(a), Age Discrimination in Employment Act.

Although *Kohmescher* was an employment discharge action under R.C. 4101.17, its reasoning is no less compelling to job-opening actions under the same statute. Thus, the first and third elements of the *Kohmescher* standard remain unchanged in a job-opening action. The second element is modified to reflect that the plaintiff-employee must demonstrate that he or she was involved in a job opening. The fourth element is modified to reflect that he or she must demonstrate that a · person not belonging to the protected class was awarded the job opening at issue.

■ In the present case, Stone has failed to demonstrate direct evidence of age discrimination and has failed to demonstrate that Butch was not a member of the protected class of individuals within the forty-to-seventy-year-old-age range pursuant to the fourth element of the standard. Additionally, other than the physical fact that Butch was fifteen years younger than Stone at the time of the job opening, Stone had no basis for alleging age discrimination, as demonstrated by Stone at his deposition of October 27, 1989, at pages 86, 99–102, attached as an exhibit to GCRTA's motion for summary judgment:

"Q Do you know how old Mr. Butch was when he was hired?

"A  I believe he was forty-four (44) or forty-five (45) years old.

"Q  And how old were you?

"A  Fifty-nine (59) I believe.

"Q  Do you have any other basis for your belief that you were discriminated against because of your age *other than the fact that Mr. Butch was fifteen (15) years younger than you?  Do you have any other basis?*

"A  *No, that would be the only basis.*

"Q  *That's your only reason?*

"A  *Yes.*

"Q  Thank you.  Are you alleging, sir, that you were denied the opportunity to fill the position in which Mr. Butch was hired because of your age?

"A  *I have no idea why I was denied the privilege of filing an application for the position.*  I have no idea whatsoever.

"* * *

"Q  Hold on.  I'll ask you again, sir, do you have any reason other than age as to why you were not given an opportunity to fill the position to which Mr. Butch was hired.  *Do you have any basis other than age as to why?*

"A  *It's what management wanted to do.*  It was a deliberate action on their part.

"Q  Deliberate action to do what?

"A  To exclude anyone from applying for the job that was capable of performing the job.

"Q  But that didn't necessarily have to do with age, did it?

"A  *No, that didn't have anything to do with age.*

"Q  *And as it relates to you,* that decision did not have to do with age, did it?

"A  *It may have.*

"BY MR. LYBARGER:  Objection.  He's already testified that it has.

"Q  It may have?

"A  *I don't know what was in the minds of Mr. Terango and the board.*

"Q  Right.  So *you don't know whether they had any intentions of discriminating against you because of age or not,* do you?

"BY MR. LYBARGER:  Objection.  He's already testified that he * * *

"A  *I don't know, sir.*

"BY MR. LYBARGER: * * * thought it was age discrimination, but he didn't know what was in their minds.

"(OFF THE RECORD)

"Q And once again, you have no basis other than age as to why Mr. Butch was given that position and not you, correct? You have none?

"A Again, I'll say *I don't know what was in the minds of the management of RTA nor the board of RTA.* So I cannot answer that question.

"Q Then why, sir, are you alleging that you were discriminated against because of your age?

"BY MR. LYBARGER: He's already testified to that * * *

"A That's a definite possibility.

"BY MR. LYBARGER: * * * about the age differential. He's already said that. He's answered it three times.

"A *It's a possibility.*

"Q Then why sir do you allege that you were discriminated against because of your age?

"BY MR. LYBARGER: He's testified as to the substantial difference in the ages. There was fifteen (15) years, of a difference between himself and Mr. Butch.

"A And on the surface, that seems kind of * * *

"Q Do you want to answer that, or do you want me to put your counsel under oath?

"A On the surface, a fifteen (15) year age differential especially when you're looking at somebody who is fifty-nine (59) years old, age discrimination is a definite possibility.

"Q So what you're doing is merely speculating at this point, right, sir?

"BY MR. LYBARGER: Objection. You're asking him to characterize his testimony.

"Q You're speculating * * *

"BY MR. LYBARGER: Objection. He's testified as to what he knows.

"Q * * * that it was because of your age, correct?

"BY MR. LYBARGER: Objection.

"Q You may answer.

"A *It's a strong feeling that I have.*

"Q   *Based upon what?*

"A   *Based upon living sixty-two (62) years.*

"Q   And what basis does that give you, sir, as it relates to Mr. Butch being hired in that position?

"A   Just a very strong feeling that I have, Mr. Davis.

"Q   For which you have no basis?

"A   That's my basis, sir.

"BY MR. LYBARGER:  Objection.  He's testified to it.

"Q   So your basis is strictly a gut reaction?

"BY MR. LYBARGER:  Objection.

"A   Well, not gut, sir.  It's based on living sixty-three (63) years.  Oh, not sixty-three (63) years.

"Q   And what does living sixty-three (63) years, sir, have to do with your forming the basis that you were discriminated against inasmuch as Mr. Butch was hired for that position and not you?

"A   That's my basis, my experience, my lifetime experience is the basis.

"Q   Thank you.  No further questions.

"BY MR. DAVIS:  I think he's indicated he's not going to waive his signature.

"(END OF DEPOSITION)" (Emphasis added.)

Based on the foregoing, we find that there was no genuine issue of material fact as to age discrimination and GCRTA was properly awarded judgment as a matter of law on that issue.

The second assignment of error is without merit.

### III

"The trial court erred in granting defendant summary judgment on plaintiff's equal pay claim."

The statute at issue, R.C. 4111.17(A), prohibits employers from discriminating in the payment of wages to any employee on the basis of age, among other suspect bases which are not relevant to this action.[5]

---

**5.**  R.C. 4111.17 provides:

"(A) No employer, including the state and political subdivisions thereof, shall discriminate in the payment of wages on the basis of race, color, religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less than the rate at which he pays wages

■ The only Ohio case found which states the elements for a *prima facie* case under R.C. 4111.17(A) is *Hollowell v. Soc. Bank & Trust* (1992), 78 Ohio App.3d 574, 605 N.E.2d 954, which applied the statute to a claim based upon race discrimination in the failure to award a promotion to the plaintiff, a black employee. *Hollowell,* at 582, 605 N.E.2d at 959, stated:

"C. WAGE DISCRIMINATION UNDER R.C. 4111.17, THE EQUAL PAY ACT

"As there is little Ohio case law in this area, the court must again look to federal law for guidance. Under the federal Equal Pay Act, there are seven elements which plaintiff must prove to establish a case of wage discrimination:

"1. an employer;

"2. pays or paid different wages;

"3. to employees of the opposite sex (or of different races);

"4. in an establishment;

"5. when they are performing equal work on jobs;

"6. which require equal skill, effort, and responsibility;

"7. under similar working conditions. See Section 206(b), Title 29, U.S.Code."

---

to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions.

"(B) Nothing in this section prohibits an employer from paying wages to one employee at a rate different from that at which he pays another employee for the performance of equal work under similar conditions on jobs requiring equal skill, effort, and responsibility, when the payment is made pursuant to any of the following:

"(1) A seniority system;

"(2) A merit system;

"(3) A system which measures earnings by the quantity or quality of production;

"(4) A wage rate differential determined by any factor other than race, color, religion, sex, age, national origin, or ancestry.

"(C) No employer shall reduce the wage rate of any employee in order to comply with this section.

"(D) The director of industrial relations shall carry out, administer, and enforce this section. Any employee discriminated against in violation of this section may sue in any court of competent jurisdiction to recover two times the amount of the difference between the wages actually received and the wages received by a person performing equal work for the employer, from the date of the commencement of the violation, and for costs, including attorney fees. The director may take an assignment of any such wage claim in trust for such employee and sue in his or her behalf. In any civil action under this section, two or more employees of the same employer may join as co-plaintiffs in one action. The director may sue in one action for claims assigned to him by two or more employees of the same employer. No agreement to work for a discriminatory wage constitutes a defense for any civil or criminal action to enforce this section. No employer shall discriminate against any employee because such employee makes a complaint or institutes, or testifies in, any proceeding under this section.

"(E) Any action arising under this section shall be initiated within one year after the date of violation."

Adopting this seven-part standard to the present case, the element contained in the parenthesis in No. 3, which was inserted by the *Hollowell* court, should reflect the basis of different age, not different race.

■ A review of the record, particularly the Stone deposition and the admissions answered by GCRTA, indicates that Stone did not possess personal knowledge of Butch's employment file, evaluations, job description, responsibilities, or educational background to establish that Butch was paid at a higher rate than Stone while possessing less skill or responsibility, or exerting less effort than Stone. See Stone deposition, at 91–97. Plaintiff has failed to meet his burden under elements 5–7, inclusive, after construing the facts most strongly in Stone's favor. Therefore, GCRTA was entitled to judgment as a matter of law in its motion for summary judgment.[6]

The third assignment of error is without merit.

*Judgment affirmed.*

NAHRA, P.J., concurs.

HARPER, J., concurs in judgment only.

---

6. Butch was employed in a bona fide professional capacity, thereby exempting him from the provisions of R.C. 4111.17. See R.C. 4111.01. This exemption defense was not raised at the trial level and is not considered in this appeal.