Lois CREECH, et al.

v.

The OHIO CASUALTY INSURANCE COMPANY.

No. C–1–95–60.

United States District Court, S.D. Ohio, Western Division.

Sept. 20, 1996.

Mark Wayne Napier, Cincinnati, OH, Edward S. Monohan, Florence, KY, for plaintiffs.

James Alan Lips, Cincinnati, OH, for defendant.

### MEMORANDUM and ORDER

BECKWITH, District Judge.

On February 2, 1995, Plaintiffs Lois Creech, Norma Smith, and Marilynn Craven initiated this action against their former employer. Plaintiffs, whose positions as auto insurance plan ("AIP") underwriters were eliminated in July 1994 as part of a reduction in force, allege that Defendant has violated the Equal Pay Act, 29 U.S.C. § 206(d); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.;* Title VII, 42 U.S.C. § 2000e, *et seq.;* Ohio's age and sex discrimination statute, Ohio Revised Code ("O.R.C.") § 4112.02; and Ohio's equal pay statute, O.R.C. § 4111.17(A). This matter is before the Court upon Defendant's motion for summary judgment.

### 1. *Background*

As of July 1994, each of the Plaintiffs had attained many years of seniority with Defendant. All were well-regarded AIP underwriters. Each was over forty years of age. In July 1994, Defendant outsourced its AIP underwriting department and eliminated Plaintiffs' positions. Plaintiffs do not contend that the reduction in force was discriminatorily implemented. They contend, however, that prior to the reduction in force, Defendant had paid male employees doing comparable work more than it paid Plaintiffs, in violation of the Equal Pay Act and O.R.C. § 4111.17(A). They further contend that, after the reduction in force, Defendant made greater efforts to assist younger employees and male employees in being rehired than it made in assistance of Plaintiffs. Plaintiffs also assert that, when they applied for positions, Defendant hired younger and male employees instead. Based upon that contention, Plaintiffs assert violations of the ADEA, Title VII, and O.R.C. § 4112.02.

Defendant moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to all of Plaintiffs' claims. Defendant contends that Plaintiffs cannot succeed on their claims under the Equal Pay Act and O.R.C. § 4111.17, inasmuch as they cannot establish that the male employees to whose compensation they compare their own were comparable in all material respects. Defendant further contends that Plaintiffs cannot establish a *prima facie* case of age or sex discrimination and that they have also failed to offer direct evidence of discrimination. Accordingly, Defendant contends that Plaintiffs' ADEA, Title VII, and O.R.C. § 4112.02 claims fail as a matter of law.

### 2. *The Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action,'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against

a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

■ Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

3. *The Equal Pay Act and O.R.C. § 4111.17 Claims*

■ In order to establish a *prima facie* case under the Equal Pay Act, Plaintiff must show that Defendant paid different wages to male employees "for equal work on jobs the performance of which require[d] equal skill, effort, and responsibility, and which [were] performed under similar working conditions." *Equal Employment Opportunity Commission v. Romeo Community Schools,* 976 F.2d 985 (6th Cir.1992) (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). Once the plaintiff in an Equal Pay Act case has established a *prima facie* case, the burden shifts to the defendant to prove one of four affirmative defenses, which "authorize an employer to differentiate in pay between sexes." *Bence v. Detroit Health Corp.,* 712 F.2d 1024, 1029 (6th Cir.1983) (citation omitted), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

■ Although Plaintiffs offer some statistical evidence concerning the comparison between the compensation of male employees and the compensation of female employees, Defendant correctly observes that that evidence does not establish a *prima facie* case under the Equal Pay Act. Rather, Plaintiffs' expert, Dr. Louis Noyd, has compared the

compensation of employees who perform various jobs with the word "underwriter" in their position titles. Because the standard requires evidence that the positions are equal in all material respects, the Court concludes that Plaintiffs' statistical evidence does not establish a *prima facie* case.

■ Plaintiffs have identified one male employee, Gene Rihm, who, apparently, was among the small group of personal lines underwriters including Plaintiffs. Plaintiffs' expert, Dr. Noyd, represents in his affidavit that in 1994 Mr. Rihm's salary was $43,284, while the average salary of the female personal lines underwriters was $32,087. Noyd Affidavit, ¶ 11. Plaintiffs have not offered evidence to demonstrate, however, that Mr. Rihm's position required equal skill, effort, and responsibility, and was performed under similar working conditions. Plaintiffs apparently rely upon the Court to assume that the positions were equal in all material respects because both positions are described as personal lines underwriters. The Court cannot make that assumption. Plaintiffs bear the burden of demonstrating equality of the positions in order to establish a *prima facie* case. Having failed to do so, they cannot succeed on their claims under the Equal Pay Act.

■ Claims under Ohio's version of the Equal Pay Act, O.R.C. § 4111.17, are subject to the same standards as are applied to claims under the federal statute. *See Stone v. Greater Cleveland Regional Transit Authority,* 92 Ohio App.3d 373, 383, 635 N.E.2d 1281 (1993). Plaintiffs' claims under O.R.C. § 4111.17 fail, therefore, for the same reason that their claims under the Equal Pay Act fail: their failure to offer evidence that Defendant paid males performing jobs that were equal in all material respects to Plaintiffs' jobs more than it paid Plaintiffs.

4. *The Age Discrimination Claims*

Plaintiffs do not assert that their positions were terminated as a result of age discrimination. Rather, they claim that Defendant's failure to offer them assistance in obtaining new employment within the company when their positions were terminated was age discrimination. Plaintiffs also allege that posi-

tions for which they applied were filled by younger employees. Plaintiffs assert claims under the ADEA and O.R.C. § 4112.02.

The order, allocation, and burden of proof models for statutory claims of discrimination are well established. The plaintiff has the initial burden of establishing a *prima facia* case by proving, by a preponderance of the evidence, facts which, if not explained, give rise to an inference of unlawful activity on the part of the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is not onerous. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). After the plaintiff has established a *prima facie* case of disparate treatment, the burden of production then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the alleged employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Wrenn v. Gould*, 808 F.2d 493 (6th Cir.1987). The burden of persuasion, however, remains at all times upon the plaintiff. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Haynes v. Miller*, 669 F.2d 1125, 1126–27 (6th Cir.1982). Accordingly, once the employer meets its burden of going forward, the burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that defendant's articulated reason for the adverse action was mere pretext. *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Wrenn*, 808 F.2d at 501; *Henry v. Lennox Industries*, 768 F.2d 746 (6th Cir.1985).

■ In order to establish a *prima facie* case of disparate treatment in the terms and conditions of employment, in this case by failing to offer assistance similar to that offered to younger employees, Plaintiffs must show (1) that they are members of the protected class and (2) that they were treated differently than similarly situated younger employees. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (citations omitted). The United States Court of Appeals

for the Sixth Circuit has stated that in order to establish a *prima facie* case, Plaintiffs must show that the younger employees to whom they compare themselves were similarly situated in every respect. *Mitchell*, 964 F.2d at 582. In other words, those employees "must have dealt with the same supervisor [and] have been subject to the same standards." *Id.* (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y.1986), *aff'd without op.*, 814 F.2d 653 (2d Cir.1987)) (other citations omitted). The burden of proof with respect to the issue of comparability rests upon Plaintiffs, who must "produce sufficient affirmative evidence to establish that the [younger] ... employees with whom [they] compare[ ] [their] treatment were 'similarly situated in all respects.'" *Mitchell*, 964 F.2d at 583.

■ Plaintiffs have identified three employees who were allegedly offered greater assistance in obtaining alternative employment within the company than were Plaintiffs. Those employees are Larry Smock, Terry Woodard, and Mike Hamann. Plaintiffs contend that the males' department head, John Busby, provided them significantly more assistance than did Plaintiffs' department head, Phil Manring.

The evidence demonstrates that Larry Smock was older than all three of the Plaintiffs. Terry Woodard was older than Plaintiff Creech. Mike Hamann was, apparently, younger than all three Plaintiffs. The evidence suggests that the same policy concerning assistance to employees whose positions were terminated applied to the male employees as to Plaintiffs. The employee responsible, under that policy, for providing such assistance was Mark Johnston, Employee Relations Manager. Plaintiffs do not offer evidence to show that Mr. Johnston offered Terry Woodard or Mike Hamann more assistance than he offered Plaintiffs.

Any efforts taken by Mr. Busby beyond those suggested by company policy do not form the basis for an ADEA claim. The only evidence in the record suggests that Defendant complied with its own policy evenly as regards Plaintiffs and the identified younger employees. (Johnston Deposition, p. 40). Plaintiffs concede that Mr. Johnston assisted

them in accordance with the policy. (Creech Deposition, pp. 104–106; Smith Deposition, pp. 101, 106–07; Craven Deposition, pp. 47–49). The fact that Busby may have offered greater assistance to his employees than Manring provided to his employees is irrelevant to Plaintiffs' claims. The difference in department heads is a dissimilarity that prevents a *prima facie* showing. *Mitchell,* 964 F.2d at 583.

■ Plaintiffs have also alleged that Defendant engaged in age discrimination in the manner in which it filled certain positions for which Plaintiffs applied. Each of Plaintiffs applied for a position as a network coordinator. Defendant hired Sally Lechler, a younger employee who, Defendant contends, had more education and more experience in related positions than did Plaintiffs. Plaintiff Creech also applied for a position as a commercial lines liaison. Defendant hired Trudy Brunner, a younger employee who, Defendant contends, has more relevant experience than Plaintiff Creech.

■ In order to establish a *prima facie* case of discrimination in a failure to hire or promote case, a plaintiff must offer evidence of the following facts:

(1) plaintiff belonged to a protected class,

(2) she applied for and was considered for a position for which she was qualified,

(3) she was not hired, and

(4) another person who was not a member of her protected class was given the position.

*See Brown v. Tennessee,* 693 F.2d 600, 603 (6th Cir.1982) (citing *Abrams v. Johnson,* 534 F.2d 1226, 1230–31 (6th Cir.1976)). Even assuming Plaintiffs could prove each of the elements of the *prima facie* case with respect to the positions filled by Sally Lechler and Trudy Brunner, Defendant is entitled to articulate a legitimate, non-discriminatory reason for giving the positions to Lechler and Brunner rather than to one of the Plaintiffs. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. In this case, Defendant has articulated such a reason for both employment decisions. Specifically, Defendant has identified superior educational backgrounds and/or superior

relevant experience as the reasons for its decisions.

■ Plaintiffs can only succeed in proving their claims by demonstrating, by a preponderance of the evidence, that Defendant's articulated reasons for hiring Lechler and Brunner are mere pretext. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95. Plaintiffs have offered no evidence that would tend to show that the articulated reasons for Trudy Brunner's hiring are pretext. They have offered no evidence to show that Brunner had less education or experience than Defendant has represented nor that Plaintiff Creech had more education or relevant experience than Brunner. Accordingly, Plaintiffs have failed to offer evidence of pretext with respect to the Brunner hiring.

■ As regards the hiring of Sally Lechler, Plaintiffs note that Defendant's proffered legitimate, non-discriminatory reason for hiring Lechler for the network coordinator position is set forth in the affidavit of Richard Thomas, Defendant's Assistant Secretary for Corporate Employee Relations. Mr. Thomas states as follows:

6. The network coordinator position was filled by Sally Lechler, age 33 at the time. She was chosen for the job over each of the Plaintiffs and other applicants because the Company believed she was best qualified due to her software, personal computer, and educational background.

Thomas Affidavit, ¶ 6.

As evidence of pretext, Plaintiffs offer a letter written by their purported occupational expert, Dr. Donald Shrey of University Rehabilitation, Inc. In that letter, Dr. Shrey states that

it is unclear as to the *specific* skills, knowledge, and abilities required of this job that were not reflected in the many years of service among the three plaintiffs, particularly through multiple career advancements and on-the-job training and experience. Nor is there any indication of the nature of Ms. Lechler's educational background in relation to the knowledge and skill demands of the network coordinator job.

■ The Shrey letter does not suffice to satisfy Plaintiffs' burden of adducing evidence of pretext. The Court first observes that the letter is not proper evidence in response to a motion for summary judgment. It is not in the form of a pleading, deposition, answer to interrogatory, admission, or affidavit. Fed.R.Civ.P. 56(c). In fact, it is not sworn testimony in any form. The letter fails to satisfy Plaintiff's burden for a second, more basic, reason as well.

Plaintiffs' burden is to adduce evidence to show that Defendant's proffered reason for its hiring decision is pretextual. In this case, the Shrey letter does not constitute evidence of pretext. Rather, Dr. Shrey states that the Thomas affidavit, in which the reason is stated, is not specific about the experience and skills required for the position in question. Dr. Shrey does not contend that Defendant has failed to articulate a legitimate reason for choosing to hire Lechler rather than one of the Plaintiffs. Rather, he opines that Thomas could have been more specific about the skills and experience offered by Lechler or required for the job.

As the Court has concluded, Defendant has carried its burden of articulating a legitimate, non-discriminatory reason for its decision. The burden, therefore, is upon Plaintiffs to introduce evidence that the articulated reason is pretext. The Shrey letter does not satisfy that burden.

■ Plaintiffs have not offered evidence to show that they possessed the qualifications required for the position, that Lechler did not possess those qualifications, or that Defendant misrepresented the required qualifications in order to hire a younger employee rather than Plaintiffs. In short, Plaintiffs have not offered evidence of pretext; they have merely offered evidence that their purported expert, who admits that he has done no research other than to read the Thomas affidavit, would desire more information concerning the job in question before opining as to the veracity of Defendant's articulated reason. Accordingly, the Shrey affidavit is not evidence of pretext. Having identified no evidence of pretext, Plaintiffs have not carried their burden. The Court concludes, therefore, that Defendant's motion for sum-

mary judgment with respect to Plaintiffs' ADEA claims is well-taken. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95.

■ The Ohio Supreme Court has held that O.R.C. § 4112.02 is generally to be interpreted in accordance with interpretations of federal anti-discrimination law. *See Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). Plaintiffs have not articulated a basis for a conclusion that their claims of age discrimination under O.R.C. § 4112.02 should survive the granting of summary judgment as to their claims under the ADEA. The Court concludes, therefore, that Defendant's motion for summary judgment as to Plaintiffs' Ohio age discrimination claims is well-taken for the reasons set forth above.

### 5. *The Sex Discrimination Claims*

The first basis for Plaintiffs' claims of sex discrimination under Title VII and O.R.C. § 4112.02 is that Defendant did not offer them as much assistance in their efforts to be rehired within the company as it offered male employees. The Court has addressed that assertion in the portion of this Memorandum and Order devoted to Plaintiffs' claims of age discrimination. For the reasons that are set forth there, the Court concludes that Plaintiffs' have not offered evidence to establish a *prima facie* case of discrimination in the terms and conditions of their employment.

■ Plaintiffs also assert that Defendant engaged in sex discrimination by offering the position of TOPPS supervisor to Terry Woodard rather than to any of the Plaintiffs, even though all of the Plaintiffs had applied for the position. Plaintiffs do not dispute Defendant's evidence that the TOPPS supervisor position was never filled.

In order to establish a *prima facie* case of discrimination in a failure to hire or promote case, a plaintiff must offer evidence of the following facts:

(1) plaintiff belonged to a protected class,

(2) she applied for and was considered for a position for which she was qualified,

(3) she was not hired, and

(4) another person who was not a member of her protected class was given the position.

*See Brown v. Tennessee,* 693 F.2d 600, 603 (6th Cir.1982) (citing *Abrams v. Johnson,* 534 F.2d 1226, 1230–31 (6th Cir.1976)). As the Court has stated, the position in question was not filled. Assuming Plaintiffs could prove the fourth element of the *prima facie* case based upon the fact that Defendant offered the position to Woodard, Defendant is entitled to articulate a legitimate, non-discriminatory reason for offering the position to Woodard rather than to one of the Plaintiffs. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

In this case, Defendant has articulated such a reason for the employment decision. Specifically, Defendant has identified Woodard's superior qualifications as the reason for its decisions. Accordingly, the burden is upon Plaintiffs to introduce evidence to show that the articulated reason is pretextual. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95. Plaintiffs have not done so.

Again, in response to Defendant's articulated reason, Plaintiffs have offered the letter written by Dr. Donald Shrey, their purported expert. Dr. Shrey states that

no evidence was reported regarding Mr. Woodard's qualifications. Therefore, it is most difficult to determine whether Mr. Woodard is more qualified than the plaintiffs.

For reasons stated in this Court's earlier discussion of the Shrey letter, the letter fails to satisfy Plaintiffs' burden of adducing evidence of pretext.

Plaintiffs argue that, even if they are unable to establish claims of sex discrimination pursuant to the *McDonnell Douglas* model, they may avoid summary judgment by introducing direct evidence of sex discrimination. *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379 (6th Cir.1993) (citing *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 549 (6th Cir.1991)). Plaintiffs contend that they have identified four separate types of direct evidence of discrimination in this case.

First, Plaintiffs contend that the evidence concerning the compensation of Gene Rihm is direct evidence of discrimination. The Court has previously observed that Plaintiffs have failed to offer evidence to show that Mr. Rihm was performing the same job that Plaintiffs were performing. The bare fact that Mr. Rihm received greater compensation than did Plaintiffs without evidence concerning the job performed or other factors impacting compensation is insufficient to create a genuine question of material fact concerning sex discrimination.

Plaintiffs also contend that Dr. Noyd's statistical analysis concerning the compensation of male and female underwriters in the years 1991 through 1996 is direct evidence of discrimination. That evidence fails to establish a claim for the same reason that the bare fact of Gene Rihm's greater compensation fails. Plaintiffs have not offered evidence to show that the positions compared in the Noyd analysis were comparable positions so that the only factor that could explain the difference in compensation was sex. As Defendant has argued, when the correct statistical sample is utilized, specifically the eight employees who performed jobs that were actually similar to Plaintiffs, the sample is too small to provide competent statistical evidence. *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987) (sample of 17 is "suspect").

The third type of evidence that Plaintiffs identify as direct evidence of discrimination is the rehiring assistance provided by John Busby to certain male employees compared to the assistance provided by Phil Manring to Plaintiffs. As the Court has noted, Plaintiffs have offered no evidence to show that the employee charged with offering rehiring assistance on behalf of Defendant discriminated based upon sex. Moreover, Plaintiffs have not adduced evidence to show that Phil Manring offered more assistance to male employees than he offered to Plaintiffs. Plaintiffs have also failed to offer evidence that tends to show that Manring's alleged failure to offer the assistance Plaintiffs desired was in accordance with any company policy or practice. The Court concludes, therefore, that the bare fact that

Busby may have offered more assistance to his employees than Manring offered to Plaintiffs does not constitute direct evidence of sex discrimination.

■ Finally, Plaintiffs contend that certain comments of Phil Manring constitute direct evidence of sex discrimination. Specifically, Plaintiffs offer evidence to show that Manring referred to Plaintiffs as "girls" and "gals" and that he told Plaintiff Creech at the time of the termination of her position that she could go home and watch soap operas.

■ Manring's comments do not constitute direct evidence of sex discrimination. Plaintiffs do not dispute Defendant's contention that Manring was not the decision-maker with respect to any position for which Plaintiffs applied after their AIP underwriter positions were terminated. Accordingly, any discriminatory animus on the part of Manring is irrelevant to Plaintiffs' claims based upon Defendant's failure to rehire them. In order for a comment, such as the ones attributed to Manring, to be sufficient to support a sex discrimination claim, the comment must have been made by a decision maker and have been related to the decision making process. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1333 (6th Cir.1994).

■ Plaintiffs also contend that the comments attributed to Manring are direct evidence that he discriminated against them by offering them less rehiring assistance than John Busby offered to male employees. As attenuated as Plaintiffs' theory is, the Court must consider whether the comments attributed to Manring give rise to a claim for sex discrimination.

■ Isolated or ambiguous comments " 'are too abstract ... to support a finding of ... discrimination.' " *Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 314 (6th Cir.1989) (quoting *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)). In order to support a claim of discrimination, the comments must reveal some discriminatory animus on the part of the speaker. *Gagne*, 881 F.2d at 314.

The Court first concludes that Manring's use of the words "girl" and "gal" to refer to female employees does not constitute direct evidence of discrimination. Those terms are ambiguous at best and do not reveal any hostility or animus toward women. Indeed, as Defendant has observed, Plaintiffs themselves repeatedly used the term "girl" to refer to other adult females during their depositions.

The Court is equally unpersuaded by the reference to viewing soap operas attributed to Manring. The reference appears to the Court to be essentially gender-neutral. Plaintiffs apparently believe that Manring would not have made the remark to a departing male employee. Nevertheless, the remark does not display animus toward women any more than the following comment would display animus toward men: "Don't worry. Pretty soon you will be home watching golf."

Plaintiffs contend that, even if none of their direct evidence gives rise to a claim of sex discrimination, the Court may not grant summary judgment in this case because they have identified several types of direct evidence and the Court must consider the combined weight of all of that evidence. Plaintiffs cite the recent decision in *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160 (6th Cir.1996).

In *Thurman*, the United States Court of Appeals for the Sixth Circuit stated that the "trial court's duty [is] to review all of the facts together, not in isolation." *Id.* at 1166. Plaintiffs argue that, taken as a whole, the evidence offered by Plaintiffs gives rise to an inference of discrimination. In the alternative, Plaintiffs argue that their "direct evidence of discrimination" gives rise to an inference that the reasons articulated by Defendant for various hiring decisions are pretext.

■ The Court does not dispute Plaintiffs' argument that it must consider the evidence as a whole. The Court concludes, however, that Plaintiffs' evidence is no more persuasive when considered as a whole than is each piece of evidence individually. In short, the Court concludes that the evidence offered by Plaintiffs is insufficient to create a

genuine issue of material fact with regard to Defendant's motives. It also fails to create an issue of fact concerning the legitimacy of Defendant's articulated reasons for various hiring decisions. The Court concludes, as a matter of law, that a reasonable jury could not, based upon the evidence submitted by Plaintiffs, conclude that the reasons articulated by Defendant were not the true reasons for its decisions and that the real motivation was discriminatory animus. Accordingly, the Court concludes that Plaintiffs' claims of sex discrimination under Title VII and O.R.C. § 4112.02 fail.[1]

### 6. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 26) is hereby **GRANTED.** This action is **DISMISSED.**

**IT IS SO ORDERED.**

---

1. The Court is equally unpersuaded by Plaintiffs' argument that the college degree requirement for certain positions within the company constitutes discrimination. Plaintiffs have adduced no evidence that tends to show that the requirement was implemented to prevent women from securing certain positions or that the requirement was enforced in a discriminatory fashion.